VOITIER *v.* LANG, administrator, *et al.*

No. 9562. FEBRUARY 17, 1934.

*Gazan, Walsh & Bernstein,* for plaintiff in error.

*Adams, Adams & Douglas* and *V. B. Jenkins Jr.,* contra.

BECK, P. J. J. M. Lang, as administrator of the estate of Alonzo Sybrandt, on February 15, 1932, filed a petition alleging the death of Alonzo Sybrandt on September 23, 1930, and petitioner's appointment as administrator of his estate, which consisted of certain cash in bank and other securities; that the intestate died un-

married, leaving surviving neither brother or sister, nor representative of brother or sister, nor parents; that petitioner was informed that certain persons bearing the relationship of first cousins (including the plaintiff in error, and all of the defendants in error except the administrator) were the heirs at law of the intestate, and all of them were non-residents of the State of Georgia; that the information which petitioner had was incomplete, and he had no means of determining whether his information was accurate; and that he was unable to determine who were the heirs-at-law of the said Alonzo Sybrandt. He prayed that he be permitted to pay the cash and securities into the registry of the court; that the court provide for service by publication of those persons mentioned in the petition, and of any and all other heirs or persons claiming an interest in the estate, and they be required to file their claims in court on or before the first Monday in June, 1932, otherwise to be forever barred from participating in the distribution of the estate; and that the court determine who are the heirs of Alonzo Sybrandt and the shares they are entitled to receive in the distribution of his estate; and for general relief. Attached to the petition was an exhibit showing the family tree of the intestate in so far as petitioner was able to construct a family tree with the information in his possession. Before the first Monday in June, 1932, in accordance with an order dated February 15, 1932, answers to the petition and claims to heirship were filed in the superior court by Mrs. Regina Morphy Voitier (the plaintiff in error), and by Miss Mina Buck, Mrs. Caroline Berg Dahm, Mrs. Bergitte Berg Knudsen, Mrs. Cecilie Berg (Mrs. Henry A.) Stibolt, and Dr. Ole Hansen Berg (defendants in error).

The case was submitted to the judge. An agreed statement of facts on which the judge based his judgment is as follows: Alonzo Sybrandt, a resident of Chatham County, Georgia, died intestate in said county on September 23, 1930. The intestate was unmarried, left no brothers or sisters or representatives of brothers or sisters, and his parents predeceased him. Intestate's paternal grandmother, Rebekka C. Figenschou, was married twice, first to Johannes D. Sybrandt, the grandfather of the intestate, and second to Christopher L. Buck, who was the grandfather of these claimants, Mrs. Bergitte Berg Knudsen, Mrs. Cecilie Berg Stibolt, Mrs. Caroline Berg Dahm, Dr. Ole Hansen Berg, and Miss Mina Buck; the first

four being children of Marcelie Buck, daughter of Christopher L. Buck, by her marriage with J. H. K. Berg; and Miss Mina Buck being a daughter of William A. Buck, a son of Christopher L. Buck, who, as above set forth, was the second husband of the mother of Johannes D. Sybrandt, the father of the intestate. These claimants therefore are first cousins of the half-blood of the intestate through the intestate's paternal grandmother (Rebekka C. Figenschou), who is their common ancestor. The only other claimant before the court is Mrs. Regina Morphy Voitier, a daughter of Edouard Morphy, a brother of the intestate's mother, Malvina Modeste Morphy. Mrs. Voitier is therefore a full-blood first cousin of the intestate through the intestate's maternal grandfather, who is their common ancestor. . . The administrator has deposited all of the assets of the estate in the registry of the court, and the only question before the court is whether the first cousin of the whole-blood (Mrs. Regina Morphy Voitier) is entitled to the estate of the intestate to the exclusion of the first cousins of the half-blood through Rebekka C. Figenschou (Mrs. Bergitte Berg Knudsen, Mrs. Cecilie Berg Stibolt, Mrs. Caroline Berg Dahm, Dr. Ole Hansen Berg, and Miss Mina Buck), or whether these first cousins of the half-blood are each entitled to an equal share of the estate with Mrs. Regina Morphy Voitier, first cousin of the full-blood as hereinbefore set forth. The court decreed that all of the claimants should share equally in the distribution of the estate. To this decree Mrs. Voitier excepted.

We do not find any case in our reports directly deciding the precise question involved in this case, nor does it seem to be expressly covered by the Georgia statute on distributions, as embodied in the Civil Code, § 3931. That section states the rules for determining who are heirs at law of deceased persons, and, after a number of provisions which are not here material, declares, in subsection 8, that "First cousins stand next in degree; uncles and aunts inherit equally with cousins." In subsection 7 it is provided that "In all degrees more remote than the foregoing, the paternal and maternal next of kin shall stand on an equal footing." We do not think that under these provisions of the statute it matters whether or not the parties were paternal or maternal next of kin. In *Redd* v. *Clopton*, 17 *Ga*. 230, this court held: "The estate of an intestate dying without wife or child, or the descendants of children, and

without father or mother, brother or sister, shall be distributed to and among all the cousins of the deceased equally, including those on the maternal as well as the paternal side." The statute upon which this decision was based was the act of 1804 (Cobb's Digest, 291-292), and there has been no act of the legislature altering materially this particular provision of the law. The parts of that act pertinent to this case are, "The next of kin shall be investigated by the following rules of consanguinity, viz.: children shall be nearest, parents, brothers, and sisters shall be equal in respect to distribution; and cousins shall be next to them." In *Redd* v. *Clopton,* supra, it was said: "This act of distributions, it will be perceived, is almost a literal transcript of the English statute of 22 and 23 Charles II, which was borrowed from the 118th Novel of Justinian. And it is admitted on all sides that in the distribution of personal property, both by the civil and common law, the preference of males over females is superseded. To re-establish this rule of feudal origin and policy, so partial, unnatural, and harsh in its principle and operation, would require language so plain that he who runs might read, and the fool and wayfarer could not err therein. Do we find such terms in the act of 1804? On the contrary, in the last clause of that act, have not the legislature declared in words the most unmistakable, that *cousins*—all cousins—maternal as well as paternal, shall be equal and equally near to the intestate? By what right or authority does any one dare to interpolate *paternal* into that paragraph? . . I am unable to discuss this point—it requires no discussion—it admits of none." The language of subsection 8 of § 3931 is that "First cousins stand next in degree." This does not limit the quality of inheritance to those cousins of the half-blood or full-blood. We may well ask, if cousins of the half-blood do not stand in the same degree of relationship to a deceased as cousins of the full-blood, in what degree of relationship do they stand? While the decision cited and others that might be cited do not directly rule the question we have under consideration, we do not doubt, from the inferences to be drawn from the language used and from the inferences from the statute which we have quoted, that the opinion of the court below upon which his judgment was based was correct, that judgment being in part as follows: "The claimants are cousins of the intestate. It is immaterial whether these cousins are on the paternal or maternal side; for the

estate should be distributed among all the cousins equally. 'A cousin on the mother's side is and of right ought to be equally as near a cousin as a cousin on the father's side.' The distribution should be among *all* the cousins."

*Judgment affirmed. All the Justices concur.*